By _____

HERMAN PALACIOS and )    D.C.A. No. 85-9017
SANTIAGO TUDELA,      )    Civ. Action No. 79-204A
                      )
        Plaintiffs-Appellants, )
                      )    OPINION.
vs.                   )
                      )
TRUST TERRITORY OF THE )
PACIFIC ISLANDS,      )
                      )
        Defendants-Appellees. )
                      )
_____)

        Attorney for Appellants:  DOUGLAS F. CUSHNIE
                                  P.O. Box 949
                                  Saipan, CM 96950

        Attorney for Appellees:  KENT HARVEY
                                 Office of the Attorney General
                                 Capitol Hill
                                 Saipan, CM 96950

BEFORE: LAURETA, DUENAS AND MARSHALL[1], DISTRICT JUDGES

MARSHALL, DISTRICT JUDGE:

    Plaintiffs-appellants Herman Palacios and Santiago Tudela appeal from the trial court's memorandum opinion granting judgment in favor of defendant-appellee Trust Territory of the Pacific Islands. Appellants raise three issues on appeal. First, whether the trial court's finding that appellants' claim is barred by the doctrine of laches is clearly erroneous?

[1]  The Honorable Consuelo B. Marshall, United States District Judge of the Central District of California sitting by designation.

905

Second, whether the trial court's finding that appellants are not the owners of Lot 007 B 06 is clearly erroneous? Third, whether or not the trial court abused its discretion in striking a portion of the testimony of appellants' expert witness on valuation?

## STATEMENT OF FACTS AND PROCEEDINGS BELOW

On November 2, 1979, Francisca T. Palacios brought an action to recover compensation for the value of certain real property taken by the United States military authority in 1944 from her father, Juan R. Tudela, deceased. According to the first amended complaint, Francisca T. Palacios and Santiago C. Tudela, the heirs of Juan Tudela, allegedly own one-half undivided interest in the property.

The first amended complaint identifies the real property at issue as "Lots Numbered 007 B 03, 0007 B 04 and 007 B 05, all as are shown in Cadastral Plat 007 B 00." (Lot 007, B 06 is not alleged in the first amended complaint). The first amended complaint alleges that from 1944 to date, defendants and their predecessors in interest have maintained roads, water and power lines, as well as various sundry buildings and other structures on said property. Palacios sought to eject defendants from said property and also sought monetary damages against Commonwealth of the Northern Mariana Islands, Marianas Public Land Corporation, and the Trust Territory of the Pacific Islands. (Her brother Santiago Tudela was also initially named as a defendant, but subsequently was realigned himself as a plaintiff).

In its answer to the complaint, Trust Territory of the

906

Pacific Islands ("Trust Territory") generally and specifically denied the allegations, and asserted the affirmative defenses of laches and the statute of limitations.

The trial court granted Trust Territory's motion for summary judgment on the ground that the statute of limitations barred Palacio's claim. On appeal, the appellate panel affirmed the decision as to the Northern Mariana Islands and Marianas Public Land Corporation, but reversed the judgment as to Trust Territory because the principles of equity barred a defense based on statute of limitations where the Trust Territory, as the Trustee, enjoyed a fiduciary relationship with the plaintiff. The appellate panel remanded the action to the trial court with instructions to conduct further proceedings to determine whether the doctrine of laches operated to bar Palacio's claim.

After remand, Herman Palacios was substituted in for Francisco Palacios, and Santiago Tudela realigned his interest as a plaintiff in this action. The subsequent trial before the Honorable Robert A. Hefner, Chief Judge, presiding, was held on July 11 and 12, 1985. At the trial, testimony as to ownership to the real property in dispute[2], boundary lines of the claims and Tudela's signature on a document agreeing to boundaries established by a 1970 survey were all submitted. Appellants called Manual Salban, a real estate appraiser, who testified as to the real property's valuation. After completion of his testimony, the trial court granted appellee's motion to strike certain portions as irrelevant. No testimony was submitted by appellants throughout the trial concerning why the lawsuit was

[2]    At the retrial, appellants' ownership of Lot 007 B 06 was seemingly raised for the first time.

907

not filed in a more timely manner.

The trial court subsequently issued a memorandum opinion finding that appellants' claims were barred by laches. Although the trial court found no liability on the part of the appellee, the trial court made further specific findings concerning the real property in dispute. Primarily, the trial court found that Tudela does not own Lot 007 B 06; that only Lot 007 B 04 had been taken from Tudela; and that damages, if any, would compute to $362.40 plus interest from the date of the taking.

## DISCUSSION

I) Laches.

A trial court's decision on the issue of laches is deemed to be a finding of fact which cannot be disturbed unless it is shown to be clearly erroneous so as to amount to an abuse of discretion. Lingenfelter v. Keystone Consol. Industries, Inc., 691 F.2d 339 (7th Cir. 1982); American Home Products Corp. v. Lockwood Mfg. Co., 483 F.2d 1220 (6th Cir.), cert denied, 94 S.Ct. 917 (1973).

Since laches is an affirmative defense, the burden of proof is ordinarily on the defendant to establish both a lack of diligence by the party against whom the defense is asserted and prejudice to the defending party. See Costello v. United States, 365 U.S. 265, 282 (1961); Ligenfelter v. Keystone Consol. Industries, Inc., supra, 691 F.2d at 340. However, where a party sleeps on his rights for a period of time greater than the applicable statute of limitations, there is a presumption of laches and the burden of proof shifts to the party bringing the

908

suit to prove the absence of laches by rebutting the presumption of undue delay and resulting prejudice to the opposing party. University of Pittsburgh v. Champion Products, Inc., 686 F.2d 1040, 1045 (3d Cir.), cert denied, 459 U.S. 1087 (1983); Randall v. Mayor & City Council of Baltimore, 512 F.Supp. 150, 152 (D.Md. 1981); see e.g. Tandy Corp. v. Malone & Hydge, Inc., 769.F.2d 362, 365 (6th Cir. 1985).

Both parties agree from their previous pleadings which are part of the record on appeal that the controlling statute of limitations pursuant to 6 T.T.C. §302(1)(b) is a twenty year limitations period. Pursuant to 6 T.T.C. §310, this limitations period is said to accrue from May 28, 1951. As the twenty-year limitations period expired on May 28, 1971 in the present action, appellants therefore have the initial burden to show the absence of laches or to rebut a presumption of undue delay and prejudice to the appellees.

Appellants proffer numerous reasons attacking the trial court's findings of laches, but as discussed below, none are persuasive. First, appellants state the that "the length of time between the commission of the breach of trust and bringing of the suit has not been established," but this statement is inconsistent with their position throughout the litigation that appellee took their property without compensation in 1944. Due to the posture of their claims, any breach of trust would ipso facto have to occur in 1944.

Second, appellants allege that appellee failed to establish whether appellants knew or had reason to know of the breach of trust. This contention, however, is contrary to the

909

trial court's factual finding that "plaintiffs and their predecessors knew of the breach of any trust or fiduciary relationship in 1944 and ever since." Appellants fail to substantiate this blanket statement with any reference to the record. Due to the nature of the taking, it appears inconceivable that appellants would not have been aware that appellee effectively took the real property in dispute by building a military road through the property.

Third, appellants assert that they were under an incapacity since: 1) there was no mechanism for enforcement of a trust until 1974; 2) there was no effective legal counsel available, and 3) they did not understand the American system because the land hearings were in English rather than the native Chammaro language. The main flaw in this argument is that appellants failed to establish the existence of incapacity in the court below and the trial court made a specific finding to this effect. Without any reference in the record to establish that the trial court was clearly erroneous, appellants fail to meet their burden on this issue. Moreover, it has been established that the ignorance of legal rights does not excuse the failure to act with reasonable dispatch. Giddens v. Isbrandsten, 355 F.2d 125, 128 (7th Cir. 1966); Randall v. Mayor & City Council of Baltimore, 512 F.Supp. 150, 154 (D.Md. 1981).

This failure to proffer any explanation substantiating appellants' arguments applies also to their argument that the beneficiaries interests "should have been presently enjoyable, but clearly wasn't." As the trial court correctly found, the interest of the landowners to the real property in issue is

presently enjoyable and not a future interest.  Moreover, the trial court further found that appellants failed to proffer any reason or produce any evidence at trial for the long delay in bringing suit.  Although appellants assert on appeal that there was no mechanism for filing a suit prior to 1974, this issue apparently was not raised in the court below, and thus need not be addressed on appeal.

Appellants also argue that application of the doctrine of laches is improper since compensation is mandated by the Constitution of the United States, the Constitution of the Northern Mariana Islands and the Bill of Rights of the Trust Territory, and thus this action is not an equitable proceeding.  However, the doctrine of laches has been held to be applicable to complaints based on constitutional claims.  Environmental Defense Fund v. Alexandere, 614 F.2d 474, 480 (5th Cir.), cert. denied, 449 U.S. 919 (1980).  Therefore, even if constitutional allegations had been included in the first amended complaint, this claim must also fail.

Lastly, appellants contend that appellees have suffered no prejudice by the delay.  This contention, however, is contrary to the evidence submitted to the trial court.  Even appellants admit that appellees have constructed and maintained a road on the premises, and in their first amended complaint admit that water and power lines, in addition to various sundry buildings and other structures, were maintained by appellees on the property in question.  In making the determination of prejudice, the trial court had before it the affidavit of William R. Satterberg, Jr., the Assistant Attorney General, who stated that as the result of

the thirty-five year delay in instituting the claim, the Trust Territory was prejudiced in that it was unable to secure witnesses and evidence concerning the construction, routing and the general nature of the highway as it was built in 1944. Satterberg's affidavit attested to the death of certain witnesses such as Juan Tudela.

Appellants contest this hardship by alleging that the death of Juan Tudela, in addition to the death of the originally named plaintiff, Francisca T. Palacios, is irrelevant to this issue in that they were not "vital" witnesses. However, this allegation also appears to be raised for the first time on appeal.

Various circuits have recognized that the length of the delay is a relevant factor in determining the actual prejudice to the parties. One court has even stated that once the analogous statutory period has expired, the courts may infer prejudice from that fact alone. Randall v. Mayor & City Council of Baltimore, supra, 512 F.Supp. at 152. Another court has applied a sliding scale standard with respect to prejudice depending on the lenth of delay: "[i]f only a short period of time has elapsed since the accrual of the claim, the magnitude of prejudice require[d] before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice will be required." Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 807 (8th Cir.), cert. denied, 444 U.S. 913 (1983).

Courts have sustained a trial court's determination of laches where the length of delay in bringing a suit is considerably less than the period presented here. In Lingenfelter, the

court affirmed a finding of laches where plaintiff delayed six years in filing suit and defendant claimed prejudice due to the fading of its potential witnesses' memories and the expenditure of monies during the delay. Lingenfelter v. Keystone Consol. Industries, Inc., supra, 691 F.2d at 342. In Cotton, the court held that a ten year delay in filing a habeus corpus petition was unreasonable where the government's affidavit establshed that files had not been retained, court reporter's notes had been destroyed, and that witnesses did not have a sufficient recollection of the events. Cotton v. Mabry, 674 F.2d 701, 705 (8th Cir.), cert. denied, 459 U.S. 1015 (1982). In Dresser, a five year delay in filing a Title VII claim was held to be an unreasonable delay where defendant submitted affidavits pertaining to unavailability of witnesses, changed personnel and loss of pertinent records. EEOC v. Dresser Industries, Inc., 668 F.2d 1199, 1203-1204 (11th Cir. 1982).

In the case at bench, appellants failed to file their action until eight years after the applicable statute of limitations had run, and thirty-five years after the actual taking of the real property in issue. The trial court had uncontradicted evidence of actual prejudice to the appellees due the the unexplained delay in filing the suit in a more timely manner. Under these circumstances, the trial court's decision should not be disturbed.

Furthermore, the trial court's decision is wholly consistent with the policy underlying the doctrine of laches. By barring relief to those who delay the assertion of their legal claims for an unreasonable period, several aims are served. Plaintiffs are

encouraged to file their suits while the courts are in the best position to resolve the disputes because as the claims become increasingly stale, pertinent evidence becomes lost, defendants invest capital and labor into their claimed property, plaintiffs gain the unfair advantage of hindsight, while defendants suffer the disadvantage of an uncertain future outcome. N.A.A.C.P. v. N.A.A.C.P. Legal Defense & Education Fund, Inc., 753 F.3d 131 (D.C.Cir.), cert denied, 105 U.S. 3489 (1985). The doctrine of laches therefore operates to aid the vigilant and not those who slumber on their rights.

II.  Ownership of Lot 007 B 06 and the Testimony of Appellants' Appraiser.

Appellants also contest the trial court's finding that Lot 007 B 06 had been previously conveyed to a Japanese firm and did not belong to either appellant. However, as appellants have failed to designate any of the exhibits admitted into evidence at trial for the record on appeal, these exhibits which include the maps of the disputed boundaries of the individual lots, are not before the court, and thus this issue cannot be addressed. Even assuming the exhibits were before the court, the evidence would not effect the court's conclusion on the dispositive issue of laches.  In the same vein, appellants' argument regarding the testimony of appellants' appraiser will also not effect the court's conclusion, and will likewise not be discussed herein.

## CONCLUSION

As discussed in Section I, the trial court's finding that

914

appellants' claim was barred by laches was not clearly erroneous but was amply supported by the record. Accordingly, the trial court's decision is hereby affirmed.

JUDGE CONSUELO B. MARSHALL